IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

                                    :

UNITED STATES OF AMERICA            :

                                    :

    v.                              :   Civil Action No. DKC 15-0296

                                    :

KOMI E. GBOTCHO                     :

                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this tax case are: (1) a motion for preliminary injunction filed by Plaintiff United States of America ("the Government") (ECF No. 2); and (2) motion for default judgment filed by the Government seeking a permanent injunction against Defendant (ECF No. 7).  The court now rules, no hearing being deemed necessary.  Local Rule 105.6. For the following reasons, the motion for a preliminary injunction will be denied as moot.  The motion for default judgment will be granted and a permanent injunction will be entered.

**I.   Background**

The Government filed the instant complaint on February 3, 2015, seeking a permanent injunction pursuant to 26 U.S.C. §§ 7407, 7408, and 7402, prohibiting Defendant Komi E. Gbotcho ("Mr. Gbotcho" or "Defendant") from preparing income tax returns

for others.  (ECF No. 1).  On the same day, the Government moved
for a preliminary injunction.  (ECF No. 2).  Service of process
was effected on February 4, 2015.  (ECF No. 4).  When Defendant
failed to respond within the requisite time period, the
Government moved for entry of default.  (ECF No. 5).  The clerk
entered default on March 12, 2015 (ECF No. 6).  The Government
filed the pending motion for default judgment on March 20, 2015.
(ECF No. 7).  To date, Defendant has taken no action in the
case.[1]

In accordance with Fed.R.Civ.P. 65, the court makes the
following findings of fact and conclusions of law.

**A.   Findings of Fact**

Taking the allegations in the complaint as true, the court
finds as follows.  Komi E. Gbotcho has operated a tax return
preparation business under various names, such as Eplatet,
Eplanet LLP, Eplanet Corp., and Eplanete Corp.  (ECF No. 1 ¶ 4).
The Internal Revenue Service ("IRS") estimates that for tax
years 2010 through 2013, Defendant prepared and/or filed at
least 1,309 tax returns through his business(es).  (*Id.* ¶ 5).

---

[1] The government attorney submitted a declaration indicating
that based on her investigation pursuant to the Servicemembers
Civil Relief Act ("SCRA"), Defendant is not in the military
service of the United States, nor has he been detailed to any
military service with any branch of the armed forces of the
United States.  (*See* ECF Nos. 7-3 & 7-4).

The IRS investigated tax returns filed by Mr. Gbotcho and his businesses from 2009 to 2013. During the audit, "50 tax returns were examined, and adjustments were made to 48 of those tax returns, for an adjustment rate of 96%, and an average adjustment of $5,063 for each tax return." (*Id.* ¶ 7). The IRS assessed penalties against Defendant in the amount of $223,500 as a result of the audit. (*Id.* ¶ 8). The IRS opened a second investigation of Defendant for tax year 2013, which is ongoing. (*Id.* ¶ 9).

Mr. Gbotcho continually prepared and submitted tax returns for individuals claiming certain personal property rental deductions, business expense deductions, and home improvement deductions. With respect to personal property rental deductions, at least two customers for whom Mr. Gbotcho prepared tax returns indicated during the IRS's audit that they had no rental property, yet Defendant claimed in their tax returns a personal property deduction in the amount of $12,856. (*Id.* ¶ 12). One customer stated that he only provided his Form W-2 to Defendant for his tax return to be prepared. The customer also told the examiner that he had been referred to Mr. Gbotcho because of his reputation for being able to get larger refunds for his customers than other tax preparers. (*Id.*). In another instance, Mr. Gbotcho prepared 2009 and 2010 tax returns for a customer claiming personal property rental deductions in the

amount of $24,723 and $28,748, respectively, but the customer told the IRS that he had no rental property and did not know why the deduction was claimed on his tax returns. (*Id.* ¶ 14). For the 2013 tax year, Defendant claimed a personal property rental deduction in the amount of $9,850 on twelve out of thirty returns selected for an audit. (*Id.* ¶ 15).

As for business expense deductions, for one customer, Defendant claimed a deduction in the amount of $12,240 for employee business expenses on the 2009 tax returns and $14,834 for 2010. (*Id.* ¶ 17). The customer indicated that she told Mr. Gbotcho that she had to buy suits for work and drive to work, and that he "grossly inflated the amounts of those expenses." (*Id.*). On another customer's 2010 tax return, Mr. Gbotcho claimed a deduction for employee business expenses in the amount of $16,914, yet the customer stated during the audit that he had no unreimbursed employee expenses and the deduction was claimed for commuting expenses. (*Id.* ¶ 18).

Mr. Gbotcho also claimed deductions for "home improvement" expenses on his clients' tax returns. Specifically, on one customer's 2013 tax return, Mr. Gbotcho claimed a deduction in the amount of $9,850 for home improvement; the customer said that he spent that amount to renovate a bathroom in his home. (*Id.* ¶ 20). In another instance, Mr. Gbotcho claimed a deduction in the amount of $18,285 on a customer's 2009 tax

return, and the customer told the IRS that the deduction was for repairs that he made to his home, such as fixing stairs and building a patio. (*Id.* ¶ 21).

## II. Conclusions of Law

### A.   Standard of Review on Default Judgment

Under Fed.R.Civ.P. 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."   A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court.   *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).   The Fourth Circuit has a "strong policy" that "cases be decided on their merits," *Dow v. Jones*, 232 F.Supp.2d 491, 494 (D.Md. 2002) (*citing United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993)), but default judgment may be appropriate where a party is unresponsive, *see S.E .C. v. Lawbaugh*, 359 F.Supp.2d 418, 421 (D.Md. 2005) (*citing Jackson v. Beech*, 636 F.2d 831, 836 (D.C.Cir. 1980)).

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F.Supp.2d at 422.   Fed.R.Civ.P. 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not

differ in kind from . . . what is demanded in the pleadings." "[C]ourts have generally held that a default judgment cannot award additional damages ... because the defendant could not reasonably have expected that his damages would exceed that amount." *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).  While the court may hold a hearing to consider evidence as to the relief sought, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate [damages]." *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001) (*citing United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

**B.   Permanent Injunction**

The Government seeks a permanent injunction pursuant to 26 U.S.C. §§ 7402, 7407, and 7408.  *See, e.g., United States v. Preiss*, No. 1:07CV00589, 2008 WL 2413895, at *4 (M.D.N.C. June 11, 2008) (analyzing request for permanent injunction under Sections 7402 and 7408 separately "because each has different language governing the grant of injunctive relief.").

Some courts have held that because Sections 7407 and 7408 expressly authorize the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied.  *See, e.g., United States v. ITS Financial, LLC*, 592 F.App'x 387, 400 (6th Cir. 2014) ("As we have previously held

6

regarding § 7408, because the statute expressly authorizes the issuance of an injunction, the traditional requirements for equitable relief need not be satisfied.") (*citing United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005)); *United States v. Stover*, 650 F.3d 1099, 1106 (8th Cir. 2011) ("'When an injunction is explicitly authorized by statute, proper discretion usually requires its issuance if the prerequisites for the remedy have been demonstrated and the injunction would fulfill the legislative purpose.' . . . The traditional criteria for permanent injunctive relief need not be discussed.") (*citing United States v. White*, 769 F.2d 511, 515 (8th Cir. 1985)); *United States v. Elsass*, 978 F.Supp.2d 901, 939 (S.D.Ohio. 2013) ("Finally, the Court notes that because each of the I.R.C. sections discussed above [Sections 7402, 7407, and 7408] expressly authorize the issuance of injunctions, the traditional requirements for equitable relief need not be satisfied." (internal quotation marks omitted)). In *The Real Truth About Obama, Inc. v. F.E.C.*, 607 F.3d 355 (4th Cir. 2010), the United States Court of Appeals for the Fourth Circuit reissued Parts I and II of its earlier opinion in the case, articulating the standard for the issuance of a preliminary injunction. The earlier opinion adopted the standard articulated by the Supreme Court of the United States in *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7 (2008), for granting a

7

preliminary injunction. *See The Real Truth About Obama, Inc. v. Federal Election Com'n*, 575 F.3d 342, 345-46 (4th Cir. 2009). Prior to *The Real Truth About Obama*, at least some courts within the Fourth Circuit dispensed with applying the traditional guidelines for equitable relief in determining whether to grant a permanent injunction pursuant to 26 U.S.C. §§ 7407 and 7408 because those statutes expressly authorize such relief. *See, e.g., United States v. Kotmair et al.*, Civ. No. WMN-05-1297, 2006 WL 4846388, at *4 (D.Md. Nov. 29, 2006), *aff'd*, 234 F.App'x 65 (4th Cir. 2007); *Abdo v. IRS*, 234 F.Supp.2d 553, 564 (M.D.N.C. 2002) ("An injunction may issue without resort to the traditional equitable prerequisites if a statute expressly authorizes the injunction."), *aff'd*, 63 F.App'x 163 (4th Cir. 2003). The court need not decide, however, whether traditional requirements for equitable relief must be satisfied before granting a permanent injunction under any of the three statutes because, as will be seen, the Government has established the equitable factors here.

**1.   26 U.S.C. § 7407**

The Government must establish three elements to obtain an injunction pursuant to § 7407: (1) the defendant must be a tax preparer; (2) the conduct alleged must fall within one of the four categories proscribed by 26 U.S.C. § 7407(b)(1)(A)-(D); and (3) the court must find that an injunction is appropriate to

prevent recurrence of the proscribed conduct. The "prohibited conduct" that the Government must demonstrate includes, *inter alia*, conduct subject to penalty under 26 U.S.C. § 6694 or any other fraudulent or deceptive conduct which substantially interferes with the proper administration of the Internal Revenue laws. *See* 26 U.S.C. § 7407(b)(1)(A), (D). The Government contends that Defendant engaged in conduct covered by 26 U.S.C. § 6694. Section 6694(a) imposes penalties on tax return preparers who prepare a return understating the taxpayer's liability due to an unreasonable position and the preparer knew or reasonably should have known of the position.

By virtue of his default, the above factual allegations are admitted. *See, e.g., Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The defendant, by his default, admits the plaintiff's well-pleaded allegations of fact[.]"). Based upon the well-pled factual allegations, Mr. Gbotcho was an income tax preparer who engaged in conduct prohibited by Section 6694.[2] Defendant prepared false tax returns claiming significant personal property rental deductions even when his customers had no rental property. (ECF No. 1 ¶¶ 11-15). For instance, Defendant prepared a tax return for a customer claiming a personal property rental deduction in the amount of $9,850.

---

[2] The Government also has submitted a declaration from Julie Hersh, Revenue Agent with the IRS, substantiating the factual allegations in the complaint. (*See* ECF No. 7-2).

During the IRS's audit audit, the customer stated that she did not have *any* property for rent and was not aware that the deduction was reflected on her tax return. (*Id.* ¶ 13). Moreover, for the 2013 tax year, Defendant claimed a personal property rental deduction in the same amount – $9,850 – on twelve of the thirty returns selected for audit. (*Id.* ¶ 15). As the Government argues, "[i]t is unrealistic to believe that 12 different customers incurred the same expenses in the same tax year." (ECF No. 7-1, at 8).

The IRS's audit further established that Defendant prepared tax returns claiming false or inflated unreimbursed employee business expenses for non-deductible items such as multi-purpose clothing and commuting expenses. (ECF No. 1 ¶¶ 16-18). For instance, on one customer's 2009 tax returns, Mr. Gbotcho claimed a deduction for employee business expenses in the amount of $12,240 and for the same customer, he claimed a deduction for employee business expenses in the amount of $14,834 in 2010. (*Id.* ¶ 17). The customer indicated that she told Mr. Gbotcho that she had to buy suits for work and drive to work. She also stated that Mr. Gbotcho grossly inflated the amounts that she provided to him to deduct as business expenses. (*Id.*). Similarly, on another customer's 2010 tax return, Defendant purportedly claimed a deduction for employee business expenses in the amount of $16,914, but the customer said that he had no

10

unreimbursed employee expenses and the deduction was claimed for commuting costs. (*Id.* ¶ 18). The admitted allegations demonstrate that Mr. Gbotcho prepared tax returns that significantly understated tax liability and that the understatements were without substantial justification.

The Government also must show that a permanent injunction is reasonably likely to prevent recurrence of the prohibited conduct. Courts "assess the totality of the circumstances" in determining whether to grant an injunction to prevent recurrence. Specifically, courts weigh the following five factors: (1) "the gravity of harm caused by the offense"; (2) the extent of the defendant's participation and . . . his degree of scienter"; (3) "the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve . . . him in such transactions"; (4) "the defendant's recognition of . . . his own culpability"; and (5) "the sincerity of . . . his assurances against future violations." *Abdo*, 234 F.Supp.2d at 564 (internal quotation marks and citations omitted).

These factors weigh in favor of a permanent injunction. As the Government asserts, Mr. Gbotcho's customers were harmed because they entrusted him to prepare accurate tax returns, but the prepared returns substantially understated their actual tax liabilities. According to the complaint, "[m]any customers now

11

face large income tax deficiencies and may be liable for sizeable penalties and interest." (ECF No. 1 ¶ 22). Mr. Gbotcho's conduct also harms the United States because "the Internal Revenue Service must devote its limited resources to investigating Gbotcho, identifying his customers, ascertaining the customers' correct tax liabilities, recovering any refunds erroneously issued, and collecting any additional tax liabilities and penalties." (*Id.* ¶ 25); *see, e.g., United States v. Reliable Limousine Service, LLC, et al.*, No. 8:11-cv-03383-JFM, 2012 WL 957620, at *3 (D.Md. Feb. 8, 2012) ("The efficacy of the federal tax system relies on employers to voluntarily file correct tax returns and pay the taxes due. The Defendants' failure to do so undermines this system and gives them an unfair advantage over the competitors who comply with the law.").

The complaint explains the results of the IRS's examination of tax returns filed by Mr. Gbotcho through his business for tax years 2009 and 2010. "During that investigation and the current, ongoing investigation, 50 tax returns were examined, and adjustments were made to 48 of those tax returns, for an adjustment rate of 96%." (*Id.* ¶ 7). For tax years 2010 through 2013, Defendant, through his business Eplanet, filed 1,309 known tax returns, of which "703 tax returns contained the personal property rental deduction and/or questionable Schedule A items

[], such as the employee business expense and home improvement expense.  Applying the adjustment rate of 96% and the average adjustment of $5,063 [], the estimated tax harm caused by Gbotcho for tax years 2010 through 2013 is approximately $3.4 million."  (ECF No. 1 ¶ 24); *see, e.g., United States v. Covington*, No. 8:13-cv-1170-T-35TBM, 2014 WL 5139206, at *4 (M.D.Fla. Sept. 17, 2014) ("The Court finds that Covington has continually and repeatedly engaged in conduct proscribed by § 7407, that an injunction prohibiting such conduct would not be sufficient to prevent Covington's further interference with the proper administration of the internal revenue laws, and thus the Court will enjoin Covington from acting as a tax return preparer."); *Abdo*, 234 F.Supp.2d at 565 (finding significant harm when the defendant filed over 200 tax returns, created at least $243,000 in understated taxes, and causing the IRS to spend valuable time investigating those tax returns); *Preiss*, 2008 WL 2413895, at *6 ("[T]he tax scheme caused significant harm to the United States Treasury and the taxpaying public by interfering with the proper administration of the internal revenue laws. . . .  Even if the United States could collect these funds, it would likely incur substantial costs and burdens in investigating and collecting the refunds from individual filers.").

As a result of the investigation, the IRS assessed penalties against Mr. Gbotcho in the amount of $223,500 under 26 U.S.C. § 6694(a) and (b) and 26 U.S.C. § 6695(f). (*Id.* ¶ 8). Ms. Hersh declares that as of March 20, 2015, the date of her declaration, Mr. Gbotcho failed to pay the penalties assessed against him and that as recently as December 2014, Mr. Gbotcho disputed the penalties assessed against him. (ECF No. 7-2, ¶¶ 13-14). The complaint indicates that the IRS has opened a new investigation into Mr. Gbotcho's tax practices based on a belief that he continues to engage in conduct subject to penalty under the tax laws. (ECF No. 1 ¶ 9). Considering the harm created by Defendant's conduct, that the IRS has already assessed substantial penalties against Mr. Gbotcho which he has refused to repay, and the IRS's belief that Defendant continues to violate tax laws, a permanent injunction is appropriate to prevent recurrence.

Moreover, the Government has satisfied the equitable factors to warrant the issuance of a permanent injunction. The Supreme Court of the United States has provided guidelines for granting permanent injunctive relief: (1) the plaintiff must have "suffered an irreparable injury"; (2) "remedies available at law, such as monetary damages, [must be] inadequate to compensate for that injury"; (3) "considering [the] balance of hardships between plaintiff and defendant, remedy in equity

14

[must be] warranted"; and (4) the court must ensure that the "public interest would not be disserved." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

First, the United States has suffered an irreparable injury as a result of Defendant's tax practices. Defendant continually prepared tax returns falsely claiming personal property rental deductions and employee business expense deductions. The well-pleaded factual allegations establish that Defendant's conduct harms his customers because many customers now face large income tax deficiencies and may be liable for sizeable penalties and interest. (ECF No. 1 ¶ 22). The Government is also harmed because for tax years 2010 through 2013, Mr. Gbotcho prepared approximately 1,309 known tax returns, 703 of which contained the personal property rental deduction and/or questionable Schedule A items and resulted in his customers underreporting and underpaying their correct tax liabilities. (*Id.* ¶¶ 23-24). The average adjustment rate for each tax return that needed adjustment (based on the 2009 and 2010 audit) was $5,063. (ECF No. 7-2 ¶ 12). As explained in the complaint, "[a]pplying the adjustment rate of 96% and the average adjustment of $5,063 listed above, the estimated tax harm caused by Gbotcho for tax years 2010 through 2013 is approximately $3.4 million." (*Id.* ¶ 33); *see, e.g., Preiss*, 2008 WL 2413895, at *10 ("The investigation of the scheme depleted the federal government's

15

limited resources, impaired the efficient administration of the internal revenue laws, and threatens to undermine the integrity of taxpayers' compliance with the nation's tax laws.").

Second, legal remedies are inadequate to compensate for the injury. As stated above, the IRS has already assessed penalties against Defendant based on the 2009 and 2010 audit, which he has disputed and has not repaid. Moreover, the complaint avers that Mr. Gbotcho continues to file false tax returns on behalf of customers even after the audit and the IRS's findings, and the IRS has opened a new investigation. Moreover, as the court concluded in *Preiss*, 2008 WL 2413895, at *10, even if monetary damages were a feasible alternative, "the United States would incur substantial costs and burdens in the investigatory and collection process. Ultimately, the United States is unlikely to collect the false refunds because of the number of filers, lapse of time and socioeconomic status of the customers."

Moreover, the balancing of hardships weigh in the Government's favor. As the Government argues, "[t]he Service spends valuable resources contacting customers and conducting examinations until the proper tax liabilities are determined. Then, the Service must engage in an often-lengthy collection process to recover the taxes owed." (ECF No. 7-1, at 13); *see, e.g., United States v. Majette*, Civ. No. 13-7238, 2014 WL 5846092, at *3 (D.N.J. Nov. 12, 2014) ("With the IRS's limited

16

resources, it cannot audit or otherwise monitor all future tax returns filed by Defendant, especially given the large volume of returns previously prepared by Defendant.   In light of Defendant's demonstrated ability and willingness to commit tax fraud on a large scale, any hardship to Defendant caused by the injunction would be outweighed by the serious risk of harm faced by Plaintiff in the absence of an injunction.").   The final factor, the public interest, also favors a permanent injunction. As the Government argues, Defendant's tax return preparation practices undermine the tax system and harm his customers, who become subject to additional tax assessments and penalties. (ECF No. 7-1, at 5).   Accordingly, all equitable factors support entry of a permanent injunction.

### 2.   26 U.S.C. § 7408

The Government also seeks an injunction pursuant to Section 7408.   Section 7408(a) of the Internal Revenue Code provides that the United States may commence an action in a district court to enjoin any person from engaging in conduct subject to penalty under §§ 6700 and 6701.   A district court has authority to grant such relief if it finds:

> (1) That the person has engaged in any conduct subject to penalty under section 6700 (relating to penalty for promoting abusive tax shelters, etc.), section 6701 (relating to penalties for aiding and abetting understatement of tax liability), section 6707 (relating to failure to furnish

17

information regarding reportable
transactions), or section 6708 (relating to
failure to maintain lists of advisees with
respect to reportable transactions), and

(2) That injunctive relief is appropriate to
prevent recurrence of such conduct.

*See* 26 U.S.C. § 7408(b).  The Government asserts that Defendant

engaged in conduct covered by 26 U.S.C. § 6701.  Section 6701

penalizes any person who aids or assists in the preparation of a

return, knows or has reason to believe that the return will be

used in connection with any material matter arising under the

internal revenue laws, and knows that such a return would result

in the understatement of tax liability of another person.  26

U.S.C. § 6701(a).

    For the reasons explained above, the well-pled allegations

in the complaint establish that Mr. Gbotcho acted as a tax

preparer and he knew that the returns he prepared contained

false information and understated tax liability.  The well-

pleaded factual allegations further establish that an injunction

is appropriate to prevent recurrence of the same conduct for the

reasons stated above.  Finally, the equitable elements are also

satisfied.

## 3.   26 U.S.C. § 7402

    26 U.S.C. § 7402 provides an additional or alternative

basis for a district court to issue "writs and orders of

injunction . . . and such other orders and decrees as may be

necessary or appropriate for the enforcement of the internal revenue laws." 26 U.S.C. § 7402(a). Injunctive relief under § 7402 is "in addition to and not exclusive of any and all other remedies." *Id.* "Section 7402(a) is not limited to enjoining specific conduct proven to violate tax laws . . . Courts have invoked § 7402(a) to enter an injunction even where there was no violation of the internal revenue laws." *United States v. ITS Financial, LLC*, 592 F.App'x 387, 395 (6th Cir. 2014). As noted above, the Government has established that Mr. Gbotcho engaged in conduct that violated Sections 7407 and 7408 of the Internal Revenue Code. Applying the traditional equitable factors also supports the issuance of a permanent injunction for the reasons explained.

### 4. Scope of the Injunction

The Government seeks a permanent injunction against Defendant Gbotcho under 26 U.S.C. §§ 7402, 7407, and 7408. The Government indicates that "[b]ecause a narrower injunction would be insufficient to prevent Gbotcho's misconduct, the United States [] seeks to prevent Gbotco and his business(es) from preparing tax returns for others, from representing others before the Internal Revenue Service, and from engaging in conduct subject to penalty under the Internal Revenue Code, or other conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws."

(ECF No. 7-1, at 6).    Furthermore, in its proposed order, the Government cites 26 U.S.C. § 7402(a) as authorizing post-judgment discovery to monitor Mr. Gbotcho's compliance with the terms of any permanent injunction entered against him. (ECF No. 7-5, at 8, Government's proposed order).[3]  Section 7402 does not expressly authorize post-judgment discovery, however.   Section 7402 states that "[t]he district courts of the United States at the instance of the United States shall have such jurisdiction to make and issue in civil actions, writs and orders of injunction . . . and such other orders and processes, and to render such judgment and decrees *as may be necessary or appropriate for the enforcement of the internal revenue laws*." 26 U.S.C. § 7402(a) (emphasis added).   The Government has not explained why post-judgment discovery is necessary or appropriate for the enforcement of tax laws, or provided any other authority for ordering post-judgment discovery. Accordingly, the permanent injunction will be entered, but the court will not order post-judgment discovery.

## III. Conclusion

For the foregoing reasons, the motion for default judgment filed by the Government will be granted and a permanent

---

[3]  The complaint also requests that the court order post-judgment discovery.  (ECF No. 1, at 11).

injunction will be entered against Defendant by separate order.

The motion for a preliminary injunction will be denied as moot.


                                    _____/s/_____
                                    DEBORAH K. CHASANOW
                                    United States District Judge